IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 06-126-ML |
| | : | |
| DWAYNE SILVA | : | |

GOVERNMENT'S OBJECTION TO DEFENDANT'S
MOTION FOR A DOWNWARD DEPARTURE

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Lee H. Vilker, Assistant United States Attorney, and hereby objects to Defendant's Motion for a Downward Departure for the reasons set forth in the accompanying Memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/Lee H. Vilker
LEE H. VILKER
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
lee.vilker@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of February, 2007, I caused the within Government's Objection to Defendant's Motion for Downward Departure to be filed electronically and it is available for viewing and downloading from the ECF system. The following participant has received electronic notification:

John M. Cicilline
381 At wells Avenue
Providence, RI 02909

I further certify that a copy was mailed via regular mail to:

Heather McLoughlin
United States Probation Officer
John O. Pastore Federal Building
Two Exchange Terrace
Providence, RI 02903

/s/Lee H. Vilker
LEE H. VILKER
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
lee.vilker@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 06-126-ML |
| | : | |
| DWAYNE SILVA | : | |

GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR A DOWNWARD DEPARTURE

Defendant Dwayne Silva ("Silva") has moved this Court for a downward departure, arguing that his criminal history category over-represents the seriousness of his criminal history. The United States respectfully disagrees. Silva has dedicated his adult life to one criminal activity after another, and, in the process, has demonstrated a disturbing tendency toward violence and a disregard for the welfare of others. Silva has well-earned his criminal history score.

*Argument*

Guidelines section 4A1.3(b) provides that "if reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."

In United States v. Perez, 160 F.3d 87, 89 (1st Cir. 1998) (en banc), the First Circuit recognized that "departures for atypical criminal history are specifically encouraged under U.S.S.G. § 4A1.3." Thus, a defendant who does not qualify for a vertical departure may still be entitled to a horizontal departure if the sentencing court finds that the assigned criminal history category significantly over-represents or under-represents the seriousness of defendant's prior

convictions. U.S.S.G § 4A1.3; United States v. Delgado-Reyes, 245 F.3d 20, 23 (1st Cir. 2001). In the policy statement regarding the adequacy of the criminal history category, the Commission provided the following recitation as an example of a case where the CHC significantly over-represents defendant's criminal history and likelihood of recidivism:

> An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure . . . .

U.S.S.G § 4A1.3.

Defendant Silva has amassed fifteen criminal history points through 13 prior convictions, all of which took place in the past 7 years. Despite this relentless pattern of criminal activity that places him well within Criminal History Category VI, Silva argues that his criminal history score somehow over-represents his actual criminal history. Silva is wrong.

Silva first appears to argue that his criminal history score is artificially high because it encompasses numerous minor motor vehicle offenses. Indeed, an examination of the Pre-Sentence Report reveals that seven of Silva's thirteen convictions are for driving with a suspended license. (See PSR ¶¶ 32, 33, 34, 36, 38, 41 and 42.) However, no criminal history points were added for four of these convictions.[1] (See PSR ¶¶ 44-49.) Nevertheless, if

[1] In addition, no criminal history points were included for the five other occasions on which defendant was arrested where the case, for whatever reason, was ultimately dismissed.

defendant's criminal history were comprised merely of these driving infractions, defendant's request for a downward departure may have had some merit.

Unfortunately for defendant, his argument glosses over three disturbing, violent and dangerous offenses that he perpetrated. Far from a record that "has very little in the way of violence," (Def. Mem. at 5), defendant's criminal convictions reflect a dangerous individual who has little concern for the safety or welfare of others. The first troubling example of defendant's propensity for violence is seen in defendant's 2002 conviction for simple assault (domestic). (PSR ¶ 31) This conviction stemmed from defendant's assault of his girlfriend in 2001. Shortly thereafter, on October 22, 2002, defendant was arrested for possession of a stolen vehicle and resisting arrest. (PSR ¶ 35) The offense facts reveal that after the defendant's vehicle was pulled over by a member of the Pawtucket Police Department, defendant left the scene and engaged in a high-speed car and foot-chase. Ultimately, the defendant raised his fists to the officer, who responded by spraying the defendant with an aerosol subject restraint spray. Amazingly, defendant only received 2 years probation for this offense.

Having failed to learn from his prior high-speed chase with the police, defendant engaged in an even more dangerous and potentially deadly chase on January 23, 2004. After being found driving a stolen vehicle, police officers attempted to pull the defendant to the side of the road. (PSR ¶ 37) Defendant ignored the direction of the officer and traveled at a high rate of speed onto Interstate 95, where he created an accident involving nine vehicles. After a police officer positioned himself to stop the vehicle, defendant motioned with his hands up that he would surrender. Instead, he gunned the engine and drove toward the officer who drew his firearm and shot one round at the vehicle. Defendant temporarily escaped, but was later captured when he hit

the Town of Lincoln's Senior Citizen Mini-Bus. Id. Miraculously, no one was killed that day as a result of defendant's conduct. As a punishment for this incredibly dangerous behavior, defendant received a sentence of one year to serve.[2]

For these three violent and dangerous convictions, defendant received a mere four criminal history points. Given the lack of concern for the safety of others that these convictions entailed, it could well be argued that defendant's criminal history category under-represents the seriousness of his criminal history and the likelihood of recidivism. While the United States does not seek an upward departure on this ground, it strongly objects to defendant's argument that his criminal history is non-violent in nature, warranting a downward departure.

*Conclusion*

Since defendant Silva became an adult seven years ago, he has dedicated his life to a relentless series of crimes. He has been arrested on nineteen occasions within a 6-year period and has sustained thirteen convictions (excluding the instant bank fraud conviction). By the age of twenty-five, defendant already finds himself comfortably within Criminal History Category VI. Defendant's dangerous and violent crimes have to date netted him proverbial slaps on the wrist from the state criminal justice system. Defendant's request for a similar break in this case is unwarranted. Defendant has well-earned each and every one of his criminal points. There is no reason to believe that defendant's criminal history category substantially over-represents his

---

[2] Defendant's violence toward police officers appears to have continued into 2005, when he was charged with obstructing a police officer and driving a motor vehicle with a suspended license. (PSR ¶ 41) The obstructing a police officer count was, however, ultimately dismissed and no further information is available concerning that particular offense.

criminal history or that it over-represents the likelihood that defendant will commit other crimes. Accordingly, defendant's motion should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/Lee H. Vilker
LEE H. VILKER
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
lee.vilker@usdoj.gov

Dated: February 20, 2007

CERTIFICATE OF SERVICE

I, hereby certify that on this 20th day of February, 2007, I caused the within Government's Memorandum of Law to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF System. The following participant has received notice electronically:

John M. Cicilline, Esquire
381 Atwells Avenue
Providence, R.I. 02903

I further certify that a copy was mailed via regular mail to:

Heather McLoughlin
United States Probation Officer
John O. Pastore Federal Building
Two Exchange Terrace
Providence, RI 02903

/s/Lee H. Vilker
Lee H. Vilker
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Lee.vilker@usdoj.gov